UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| In re | ) | Chapter 11 |
|---|---|---|
| | ) | |
| THE ROOKWOOD CORPORATION, | ) | Case No. 11-12756 |
| | ) | |
| Debtor. | ) | Judge Jeffery P. Hopkins |

**RESPONSE OF TINC, LLC TO UNITED STATES TRUSTEE'S MOTION REQUESTING ORDER DIRECTING THE APPOINTMENT OF A TRUSTEE PURSUANT TO § 1104 OR CONVERTING/DISMISSING THE CASE PURSUANT TO §1112**

TINC LLC ("TINC"), by counsel, submits its Response to the "United States Trustee's Motion Requesting Order Directing the Appointment of a Trustee Pursuant to § 1104 or Converting/Dismissing the Case Pursuant to § 1112," and to the Response thereto filed by Christopher Rose, a petitioning creditor who now purports to be acting as the sole director of the Debtor pursuant to contested and disputed shareholder consents.

### I. Introduction

Five years ago, one of the petitioning creditors, Christopher Rose, tried to revive Rookwood Pottery as a viable business. He failed. In December 2010, after several years of running through funds provided by new investors and amassing millions of dollars in debt, Rose was removed as CEO and director of the Debtor by the majority will of the shareholders. Deeply angered by this removal from control, Rose has since embarked on a scorched-earth litigation strategy – demonstrating at every turn that he would rather see the Debtor destroyed, its employees jobless, and its assets scattered, than lose control of the company. Initially, Rose challenged his removal, as well as the lawful acquisition of a secured interest in the Debtor's assets by TINC, in the Hamilton County Court of Common Pleas. Livid when that court denied his request to enjoin TINC's enforcement of its security interest through a fair and impartial

Article 9 sale, Rose and two other unsecured creditors commenced this involuntary Chapter 11 case. Unsuccessful in state court, Rose now asks this Court to adjudicate the same issues he raised in the Hamilton County Court of Common Pleas three months ago, seeking here what he could not get there – a halt to the orderly distribution of a debt-ridden company's assets and renewed control of the Debtor. This involuntary bankruptcy case is simply a litigation strategy, and Rose's pretense that he is acting for the Debtor is a similar tactic.

## II. Background

Rookwood Pottery has a long and storied history in the city of Cincinnati and world-wide. In the late 1880s and through the early part of the 1900s, Rookwood was an international force in the creation of artistic pottery. But, like many companies, Rookwood suffered during the Great Depression and was forced to file bankruptcy in 1941. Over the next forty years, several business people attempted to revive Rookwood. Ultimately, in 1982, Dr. Arthur Townley purchased all of Rookwood Pottery's assets. Dr. Townley held the assets until 2006, when he sold them to the Debtor, The Rookwood Corporation. In connection with that sale, the Debtor gave Dr. Townley and his wife, Rita, a Promissory Note dated May 12, 2006 (the "Townley Note") in the amount of $1,597,500.00, and executed a Security Agreement dated May 1, 2006 (the "Townley Security Agreement") in favor of the Townleys securing the indebtedness under the Townley Note and granting the Townleys a security interest in substantially all of the Debtor's assets.

At that time, the Debtor was run by a small group of investors, led by Christopher Rose. Under Rose's leadership, the Debtor was unable to operate profitably. It was often necessary to bring in new investors and borrow additional money to fund operations. In 2007, Martin Wade and his wife, Marilyn, took an interest in the Debtor and the efforts to revive it as a viable Cincinnati icon. The Wades formed ASTFH LLC and, between 2007 and 2008, ASTFH LLC

purchased four million shares of the Debtor. At that time, ASTFH LLC and Rose were the two largest shareholders of the Debtor, each holding approximately four million shares. In 2008, Mr. Wade was elected to the board of directors of the Debtor. Since then, ASTFH LLC has acquired roughly 4 million more shares of the Debtor.

Despite the influx of new investments, however, Rose and his team continued to run the business poorly, ultimately defaulting on the Townley Note. In 2010, when the Townley Note matured, the Debtor had missed multiple quarterly payments and owed approximately $1 million at the start of 2010. In February, the Townleys notified Rookwood that it was in default. By the fall of 2010, they had retained Ohio counsel to file an action against Rookwood. Even then, Rookwood was unable to generate just $5,000, which Rose had promised to pay the Townleys to forestall the litigation. Ultimately, the Townley Note was purchased by TINC, saving the company from costly litigation and the likely cessation of its business.

Martin Wade was and is committed to ensuring that Rookwood continues as going concern. In addition to the Townley obligations in the amount of $1,215,010.00 which Mr. Wade purchased through TINC, he directly and indirectly assisted the Debtor in obtaining other secured debt to fund its operations. Upon the commencement of this case, the Debtor owed roughly $3,042,000.00 on these other secured obligations, including approximately $1,233,000.00 to First Bank (on which Mr. Wade and his wife are co-obligors); approximately $673,000.00 to the Department of Development—State of Ohio (which Martin Wade personally guaranteed); and approximately $1,136,000.00 to Martin Wade himself.

Unhappy with the Debtor's years of poor performance and Rose's gross mismanagement, shareholders holding a majority of the Debtor's stock consented to or ratified the removal of Rose as a director of the Debtor effective December 22, 2010. The Board of Directors of the Debtor

removed Rose as an officer of the Debtor that same day, an action also ratified by a majority of the Debtor's shareholders.

Angered by his removal from control of the company he had literally run into the ground, Rose filed an action in the Hamilton County Court of Common Pleas against the Wades, ASTFH, and TINC (the "State Court Action"). Rose made the very same allegations in that court that he is now making before this Court. He sought and was denied a Temporary Restraining Order from the state court seeking to prevent TINC from enforcing the Townley Note. During this time, the Debtor's new management, led in part by Mr. Wade, has been working to maintain the company's goodwill and devise a plan by which the business can continue as a going concern in Cincinnati, preserving the iconic Rookwood brand as well as jobs for more than 20 employees—some of them highly skilled artisans—in Cincinnati's Over-the-Rhine neighborhood. The Wades have provided substantially all of the Debtor's operating capital to allow it to pay vital, current obligations such as payroll and utilities.

Because of the Debtor's inability to continue servicing its debt, management concluded that the Debtor's assets should be sold at auction pursuant to Article 9 of the Ohio Uniform Commercial Code. A majority of the Debtor's shareholders consented to this decision. Rippe & Kingston Capital Advisors was engaged to market the company publically, and prepared a Confidential Memorandum regarding the Debtor's business, assets, and financial condition issued on April 15, 2011. Notices to the Debtor's secured creditors were issued on April 13 and 14. The auction was originally scheduled for April 27, but was postponed until May 6, with Qualified Bid Documents to be submitted by May 4. Six buyers expressed preliminary interest and received the Confidential Memorandum. After almost three weeks of marketing, DITR, LLC, an entity formed

by the Wades for the purpose of buying Rookwood's assets and rescuing its business, was the only Qualified Bidder as of May 4.

Having failed to stop the sale in the State Court Action – and apparently unable to present a viable bid at the Article 9 sale – Rose coordinated the commencement of this involuntary bankruptcy against the Debtor in an attempt to convince this Court to do what the state court would not. Then on June 20, 2011, Rose produced "unanimous written consents" of the Debtor's shareholders, purporting to remove Mr. Wade as Director of the Debtor. Within days of being a petitioning creditor, Rose now claims to be the sole director of the Debtor, and purports to have fired current management and replaced the Debtor's president, Chip DeMois.

Current management and Mr. Wade, however, have raised serious questions about the validity of the "unanimous written consents" produced by Mr. Wade. For example, the consents are not unanimous. Further, some of the consents were executed by Rose himself on behalf of a voting trust before members of the voting trust received copies of the consent as required by the trust. The consents are undated, or Rose himself filled in the date. These concerns were conveyed to Rose by way of a June 24, 2011 letter from Mr. DeMois, but Rose has not responded. Moreover, two shareholders collectively holding 500,000 shares have since revoked their consents and Mr. Wade has purchased their shares. Through counsel and by direct communication between the Debtor and Rose, Rose was informed of those actions. Despite these developments, Rose's counsel has made filings in this Court purporting to act for the Debtor – including commencing an adversary proceeding asserting the very claims asserted by Rose in the State Court Action.

Simply put, Rose is not acting for the Debtor; he is acting for himself. The issues raised in this Court have already been raised by Rose and are pending in the State Court Action. The Hamilton County Court of Common Pleas is the proper forum in which this shareholder dispute

should be decided, and this involuntary case is simply one more litigation strategy of Rose in his desperate attempt to regain lost control of Rookwood.

### III. Argument

**A.    The Appointment of a Trustee Is Untenable and Unnecessary.**

Rose, purporting to act as the sole director of the Debtor, suggests that appointment of a trustee under 11 U.S.C. § 1104 is the only way to ensure the success of this Chapter 11 case. To the contrary, if Rose is correct and he now controls the company, it is highly unlikely that the Debtor can successfully operate in Chapter 11 for any length of time, with or without the appointment of a trustee.

By virtue of its purchase of the Townley obligations, TINC holds a properly perfected, first priority security interest in substantially all of the Debtor's assets and all proceeds thereof. While Rose asserts that TINC's interest may be equitably subordinated under 11 U.S.C. § 510, he has not challenged TINC's perfection, and has no basis to do so. Section 510, in fact, contemplates that a claim must first be allowed before it can be subordinated. Accordingly, TINC has an interest in all of the Debtor's cash collateral and pursuant to 11 U.S.C. § 363(c)(2), the Debtor cannot use that cash collateral to operate its business unless (A) TINC consents, or (B) the Court authorizes such use and requires adequate protection for that use. In this case, to the extent there is even sufficient cash on hand to operate the business, TINC does not and will not consent to the use of cash collateral. Nor will TINC or Martin Wade provide any new funds to the bankruptcy estate. Furthermore, because the Debtor has no ability to generate postpetition operating funds free and clear of TINC's security interest, adequate protection is an impossibility.

On June 8, 2011, TINC filed its Motion for Relief from Stay in this case, seeking relief from the automatic stay pursuant to 11 U.S.C. § 362(d) with respect to its collateral, to obtain

possession of that collateral, and to proceed with the previously-scheduled and fully-marketed public sale of that collateral under Article 9 of the Ohio Uniform Commercial Code. Rose has objected and the matter has been set for hearing on July 5, 2011. If TINC's motion is granted, there will be no assets for the a trustee to oversee and no business to operate.

With no ability to pay critical postpetition obligations let alone compensate a Chapter 11 trustee, and quite possibly no assets with which to operate the business, the appointment of a Chapter 11 trustee would serve no purpose.

**B.      This Matter Should Be Adjudicated in the State Court.**

Rose asserts that this Court is the only forum in which Mr. Wade's security interest can be equitably subordinated. Mr. Rose has apparently forgotten, or is simply choosing to ignore, the assertions he has made time and again in the Hamilton County Court of Common Pleas. In the State Court Action, Rose expressly requested this relief, asking for "<u>equitable</u> relief . . . barring Defendants from enforcing the Townley note and instead <u>declaring that monies used to purchase the note are an unsecured loan to Rookwood</u>." Rose has also sought equitable relief in the State Court Action seeking to prevent TINC from transferring any assets secured by the Townley Note. The State Court denied that Motion. Rose cannot now argue that this relief is unavailable anywhere other than this Court when he himself sought the exact same relief just three months ago in the State Court Action.

This involuntary bankruptcy case and every issue arising herein stems from a shareholder dispute and presents no unique bankruptcy issues. Bankruptcy courts have frequently held that such inter-company disputes are best resolved in state court. <u>See</u>, <u>e.g.</u>, <u>In re Jr. Food Mart of Arkansas, Inc.</u>, 241 B.R. 423, 427 (Bankr. E.D. Ark. 1999) ("More importantly, dissatisfaction with another court's rulings, or the perceived untimeliness of rulings, is not a reason to file a

bankruptcy case.  Indeed, such a filing may constitute an abuse of the bankruptcy process."); In re Mazzocone, 183 B.R. 402, 421 (Bankr. E.D. Pa. 1995) ("Because a bankruptcy court is often not the proper forum in which to adjudicate non-bankruptcy issues, litigation of such issues is frequently best left to the state courts and should not be imposed upon this specialty court unless necessary to resolve a bankruptcy-centered dispute."); In re Silver Spring Center, 177 B.R. 759, 760 (Bankr. D.R.I. 1995) ("If the Debtor's position has merit, it may seek injunctive relief in the State Court pending the outcome of the litigation there.  Conversely, if there is no merit to the Debtor's position, then it should fail, regardless of the forum in which the issues are litigated.  Because the Debtor thinks it would be happier in Bankruptcy Court, does not entitle it to be here.").

## IV.  Conclusion

For the foregoing reasons, a Chapter 11 trustee should not be appointed in this involuntary bankruptcy case.  Instead, and as requested by the United States Trustee, this case should be dismissed.

Dated: June 30, 2011                             Respectfully submitted,

                                                               /s/  Timothy J. Hurley
                                        Timothy J. Hurley (0006458)
**TAFT STETTINIUS & HOLLISTER LLP**
425 Walnut Street, Suite 1800
Cincinnati, Ohio  45202-3957
Phone: (513) 381-2838
Fax:    (513) 381-0205
Email: hurley@taftlaw.com

*Attorneys for Creditor, TINC LLC*

12244237

**CERTIFICATE OF SERVICE**

       I hereby certify that on June 30, 2011, a copy of the foregoing was served electronically on the following registered ECF participants through the Court's ECF system at the email addresses registered with the Court:

    Reuel D. Ash
    Attorney for Petitioning Creditors
    rash@ulmer.com

    Monica V. Kindt
    Assistant U.S. Trustee
    monica.kindt@usdoj.gov

and by regular U.S. mail, postage prepaid, upon the following:

    The Rookwood Corporation
    1920 Race Street
    Cincinnati, OH 45202

    First Bank
    Attn: Greg Noll
    9395 Kenwood Road, Suite 104
    Cincinnati, OH 45242

    First Bank
    11901 Olive Blvd.
    Creve Couer, MO 63141

    Department of Development of the State of Ohio
    Attn: Loan Servicing
    Riffe Tower
    77 South High Street, 28th Floor
    Columbus, OH 43226

    Ronald Bates
    1859 Keys Crescent Lane
    Cincinnati, OH 45206

    Martin Wade
    119 East Court Street
    Cincinnati, OH 45202

                                         /s/ Timothy J. Hurley